**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Primoris Energy Services Corporation,<br><br>    Plaintiff,<br><br>v.<br><br>Air Products and Chemicals Incorporated, et al.,<br><br>    Defendants. | No. CV-24-01072-PHX-DWL<br><br>**ORDER** |

In April 2023, Primoris Energy Services Corporation ("Primoris") contracted with Air Products & Chemical Inc. ("Air Products" or "APCI") to perform certain work on property belonging to Intel Corporation ("Intel") as part of a larger construction project. A variety of setbacks caused Primoris to incur unexpected additional costs and perform unexpected additional work. In this action, Primoris asserts an array of claims against several defendants arising out of those setbacks.

Now pending before the Court is Air Products' motion to dismiss two of those claims: Count Two (unjust enrichment) and Count Three (quantum meruit). (Doc. 56.) For the reasons that follow, the motion is denied.

## BACKGROUND

I.   Factual Allegations

The factual allegations set forth below are derived from the operative pleading, the First Amended Complaint ("FAC"). (Doc. 54.)

…

A. **The Parties**

Primoris "is a Texas corporation with its principal place of business in the State of Texas and is authorized and licensed to conduct business in the State of Arizona." (Doc. 54 ¶ 1.)

Air Products "is a Delaware corporation with its principal place of business in Pennsylvania and is authorized and licensed to conduct business in Arizona." (*Id.* ¶ 3.)

Intel "is a Delaware corporation headquartered in Santa Clara, California, and is the owner of the real property located in Maricopa County, Arizona, in which the labor and materials provided by Primoris were incorporated and which is the subject of this action." (*Id.* ¶ 5.)

Travelers Casualty and Surety Company of America ("Travelers") "is a Connecticut corporation headquartered in Hartford, Connecticut, and is licensed to conduct surety business in Arizona." (*Id.* ¶ 6.)

B. **Relevant Facts**

On or about April 13, 2023, Primoris and Air Products executed Purchase Order No. 4506032244 (the "Subcontract"), wherein Primoris agreed to perform certain mechanical, piping, and structural work in exchange for payment from Air Products. (*Id.* ¶ 19.) "The original lump sum amount due to Primoris from Air Products under the [Subcontract] was . . . $49,526,760.00. (*Id.* ¶ 20.)

"Despite Primoris'[s] early commencement of its Work, its Work was nevertheless plagued by extraordinary difficulties, impediments, and delays that were wholly outside of Primoris'[s] control, were unusual and not foreseeable, and were not contemplated by the Contracting Parties at the time of the [Subcontract]." (*Id.* ¶ 25.) "For example, and as further detailed herein, the problems and difficulties encountered include, among other things, a delay in the Project's foundation that led to [Air Products'] termination of its foundation contractor; delays in the piping, equipment and other materials supplied by [Air Products]; issues with site access; [Air Products'] failure to coordinate trades and other work; and overall Project delays, as well as undisclosed mandatory monthly site shutdowns

implemented by the Project's owner, Intel." (*Id.* ¶ 28.) In addition to incurring costs as a result of these delays, Primoris also performed work that was outside the scope of the Subcontract as a result of these delays, including "an extraordinary amount of APCI-directed change order work, which included additional welds, pipe fabrication modifications and corrections, backfilling foundations, out of scope work relating to cold box dress out, and directed changes to Primoris'[s] means and methods including, for example, out of scope equipment preservation activities." (*Id.* ¶ 77.) "In fact, over 288 change orders were requested by Primoris to date for Intel requested, APCI-directed scope changes, totaling over $14,000,000.00 and representing nearly a 30% increase in the original value of the [Subcontract], however these changes do not capture the total cost of the changes, impacts, delays and acceleration imposed by APCI." (*Id.* ¶ 78.) "Primoris remains unpaid for many of these APCI-directed changes." (*Id.* ¶ 79.)

"In addition to the above scope changes, Primoris was directed to undertake work for a building known as the 'Compressor Building,' which work clearly fell outside of the [Subcontract]." (*Id.* ¶ 87.) Primoris performed this work "with the understanding that it would be performed as directed, under protest, and that Primoris was entitled to a change order for its performance of the Extra Scope work." (*Id.* ¶ 93.) However, despite Primoris's "continued demand, APCI failed to compensate Primoris for costs related to the directed changes, unilateral contract changes, and the Extra Scope work." (*Id.* ¶ 94.)

II.   Procedural History

On January 24, 2025, Primoris filed the FAC. (Doc. 54.) The FAC asserts ten counts: (1) breach of contract against Air Products; (2) unjust enrichment against Air Products and Intel; (3) quantum meruit against Air Products and Intel; (4) violation of the Prompt Pay Act against Air Products; (5) breach of the covenant of good faith and fair dealing against Air Products; (6) a claim for declaratory relief for Cardinal/Material Change against Air Products; (7) a claim for declaratory relief for impossibility/impracticability against Air Products; (8) a claim for declaratory relief for commercial frustration/frustration of purpose against Air Products; (9) a claim for

declaratory relief for abandonment against Air Products; and (10) a claim for lien foreclosure against bond against Air Products and Travelers. (*Id.* ¶¶ 107-201.)

On February 7, 2025, Air Products filed the pending motion to dismiss. (Doc. 56.) The motion is now fully briefed. (Docs. 63-64.)[1]

**DISCUSSION**

I. <u>Legal Standard</u>

Under Rule 12(b)(6), "to survive a motion to dismiss, a party must allege sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Id.* at 1144-45 (citation omitted). However, the court need not accept legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678-80. Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. The court also may dismiss due to "a lack of a cognizable legal theory." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (citation omitted).

II. <u>Unjust Enrichment (Count Two)</u>

A. **The Parties' Arguments**

Air Products argues that "Primoris cannot plead a cause of action for unjust enrichment due to the existence of the valid and enforceable Subcontract" that "covers Primoris's scope of work for the Project." (Doc. 56 at 6-8.) Air Products further argues that "Primoris does not dispute that the Subcontract governed Primoris's work" and "even alleges that the Subcontract is valid and enforceable," "[t]hus, Primoris's unjust enrichment

---

[1] Primoris's request for oral argument (Doc. 65) is denied because the issues are fully briefed and oral argument would not aid the Court's decision. *See* LRCiv 7.2(f).

1 claim—arising from a relationship governed by a valid and enforceable contract—is barred
2 under Arizona law." (*Id.* at 8.) Last, Air Products argues that Primoris cannot establish
3 the fifth element of an unjust enrichment claim—the absence of a legal remedy—because
4 "Primoris has not pled, and cannot plead, that it has no adequate legal remedy as the
5 Subcontract governs its relationship with Air Products and provides a legal remedy in the
6 form of a breach of contract claim." (*Id.* at 9.)

In response, Primoris argues that it pleaded its unjust enrichment claim in Count Two in the alternative to its breach of contract claim in Count One, which is permissible under the Federal Rules of Civil Procedure. (Doc. 63 at 7-10.) Primoris cites a litany of cases in support of this principle and argues that Air Products' cases "are all inapposite" because, whereas in those cases "it was literally not possible for the plaintiff[s] . . . to assert a claim for unjust enrichment without also asserting that there was a valid agreement between the parties," in this case, "Primoris can and has pled that, in the event it is determined that no contract between Primoris and APCI exists or that the Parties' agreement is otherwise unenforceable or not applicable, Primoris is still able to set forth all of the requisite elements for pleading a claim for unjust enrichment." (*Id.* at 9-10, cleaned up.) Primoris thus argues that it has satisfied all of the elements of unjust enrichment, including the absence of a legal remedy. (*Id.* at 11-12.)

In reply, Air Products argues that under the applicable pleading standard, "the Court must accept as true the factual allegations contained in the [FAC] and determine whether those factual allegations state a plausible claim for relief"; that because "Primoris specifically pleads" that "a valid and enforceable contract was entered into by the Contracting Parties," the FAC incorporates this allegation into the unjust enrichment claim; and that because the FAC nowhere alleges any alternative facts or that the Subcontract is invalid or unenforceable, the Court must presume that the Subcontract is valid and enforceable and thus "Primoris's claims for unjust enrichment . . . fail." (Doc. 64 at 3-4.) Air Products further argues that Primoris's claim for unjust enrichment "assume[s] the [Subcontract] is valid and enforceable" because "Primoris alleges that Air Products

tendered payment of approximately $40,444,279.27 under the [Subcontract] but failed and refused to tender further payment to Primoris" and "seek[s] to recover the alleged remaining balance on the [Subcontract]," which claim "sound[s] in contract, not equity." (*Id.* at 4-5, cleaned up.) Last, Air Products argues that Primoris's cited cases are inapplicable. (*Id.* at 5-8.)

B. **Analysis**

Under Arizona law,[2] an unjust enrichment claim has "five elements: (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law." *Freeman v. Sorchych*, 245 P.3d 927, 936 (Ariz. Ct. App. 2011). Often, "where there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application." *Brooks v. Valley Nat. Bank*, 548 P.2d 1166, 1171 (Ariz. 1976) (citations omitted). However, "[t]he mere existence of a contract governing the dispute does not automatically invalidate an unjust enrichment alternative theory of recovery." *Victory Ins. & Fin. Servs. LLC v. Ben Oberg Enters. LLC*, 2025 WL 661879, *4 (D. Ariz. 2025) (citing *Adelman v. Christy*, 90 F. Supp. 2d 1034, 1045 (D. Ariz. 2000)). Even when a contractual relationship exists, one party may still assert an unjust enrichment to seek damages not governed by the contract. *Summers v. Gloor*, 368 P.3d 930, 934. (Ariz. Ct. App. 2016) ("[T]he jury apparently rejected [Gloor's] claim that the loan contract contemplated repayment in-kind. The parties' relationship relative to the bakery product was therefore not governed by any contract, and Gloor was entitled to seek equitable relief as an alternative."). Moreover, even if a contract's terms specifically govern an alleged breach, a party may still seek relief under an unjust enrichment theory if that contract is later deemed unenforceable. *Agric. Hydroponic Coop., LLC v. Paredes*, 2025 WL 1882817, *3 (Ariz. Ct. App. 2025) ("[W]hen a contract is unenforceable, unjust enrichment remains viable."); *Adelman*, 90 F. Supp. 2d

---

[2] Primoris and Air Products appear to agree that Primoris's claims are governed by Arizona law. (Doc 56 at 6, 10; Doc. 63 at 10, 12.)

- 6 -

at 1045 n.10 ("[I]f the 1994 Agreement is found to be invalid for a yet-undisclosed reason, she may be entitled to unjust enrichment for the value of whatever services she did perform.").

Thus, under some circumstances, "a plaintiff can pursue an unjust enrichment claim as an alternative theory of recovery in conjunction with a breach of contract claim, subject, however, to only one recovery." *Lopez v. Musinorte Ent. Corp.*, 434 F. App'x 696, 699 (9th Cir. 2011). *See also* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."). But when a plaintiff would not have an unjust enrichment claim but-for a breach of contract, that unjust enrichment claim is not genuinely pleaded in the alternative. *275 Rivulon Boulevard, LLC v. Am. Pac. Mortg. Corp.*, 2025 WL 743997, *7 (D. Ariz. 2025) ("Here, a contract governs the relationship between the parties. Because Plaintiff would not have a claim but for Defendant's alleged breach of the lease agreement, Plaintiff's claim for unjust enrichment is barred as a matter of law. As such, Plaintiff's unjust enrichment claim is dismissed with prejudice.").

Applying these principles, Primoris is not barred from asserting an unjust enrichment claim at this early stage of the case. Although the FAC alleges that the parties entered into a valid contract and alleges a breach of that contract, the FAC specifically clarifies that the unjust enrichment claim is being asserted "in the alternative to [the contract claim] in Count I." (Doc. 54 ¶ 116.) The FAC further alleges that, at Air Products' request, Primoris performed additional work, labor, and services beyond those specifically described in the Subcontract, which enriched Air Products (and Intel) and for which Defendants have not paid. (*Id.* ¶¶ 121-25.) If, as Air Products contends,[3] the Subcontract does not require Air Products to pay for these efforts, then Primoris would have no legal remedy[4] and thus may be able to seek recovery under a theory of unjust enrichment. *Victory*, 2025 WL 661879 at *4 (noting that the "mere existence of a contract governing

---

[3] Air Products specifically disputes all of Primoris's claims under the Subcontract apart from the existence and validity of the Subcontract. (Doc. 56 at 9.)

[4] For this reason, the FAC also adequately alleges the fifth element of an unjust enrichment claim.

- 7 -

the dispute does not automatically invalidate an unjust enrichment alternative theory of recovery"). Likewise, it's at least possible at this stage of the case that the Subcontract may ultimately be deemed invalid or unenforceable. Given these possibilities, it would be improper to dismiss Primoris's alternative unjust enrichment claim at the pleading stage.

Air Products' cited authorities do not compel a different outcome. Air Products cites *Trustmark Ins. Co. v. Bank One, Arizona, NA*, 48 P.3d 485 (Ariz. Ct. App. 2002), *Johnson v. KB Home*, 720 F. Supp. 2d 1109 (D. Ariz. 2010), and *Seaboard Sur. Co. v. Grupo Mexico, S.A.B. de C.V.*, 2009 WL 4827029 (D. Ariz. 2009), but those cases are all distinguishable for the same reason—they involved claims for unjust enrichment that would not have existed but-for a breach of contract and thus were not truly "alternative" claims.

In *Trustmark*, a plaintiff brought an unjust enrichment claim against a defendant for failure to pay a wire transfer. 48 P.3d at 492. The court held that this was improper because a valid contract "governed the relationship of the parties." *Id.* The court elaborated: "If Bank One, under whatever contractual documents might be found to be in force and effect, was contractually obligated to make the wire transfers, then Trustmark has (or had) a breach of contract remedy. If Bank One was not obligated to transfer funds from the account, any perceived 'enrichment' was not unjust." *Id.* Thus, "Trustmark is not seeking to pursue its unjust enrichment claim in the alternative; rather, it seeks to avoid possible contractual limitations on its recovery by resorting to an unjust enrichment cause of action." *Id.* at 493.

Similarly, in *Johnson,* a plaintiff asserted a claim for unjust enrichment against contractual counterparties but the court concluded that the unjust enrichment claim was tantamount to a claim for an alleged breach of the contract's implied covenant of good faith and fair dealing. 720 F. Supp. 2d at 1123. Thus, as in *Trustmark*, the unjust enrichment claim was not, in fact, an *alternative* claim. This was also the situation in *Seaboard*, which relied on *Trustmark* to dismiss an unjust enrichment claim based on an alleged failure to indemnify because that failure was necessarily governed by the existing contract between

the parties. *Seaboard*, 2009 WL 4827029 at *13-14.

Unlike the unjust enrichment claims in those cases, Primoris's unjust enrichment claim is separable from its breach-of-contract claim and is thus genuinely pleaded in the alternative. Primoris alleges that Air Products (as Intel's agent) asked Primoris to perform additional work, labor, and services, benefitted from such efforts, and has not paid for them. This is the sort of situation in which equitable relief, such as a claim for unjust enrichment, may be available. *Costanzo v. Stewart*, 453 P.2d 526, 528 (Ariz. 1969) ("It has long been the law that restitution is available for services to and for affixation of chattels to land yielding benefit to another."); *see also* 7 Bruner & O'Connor Construction Law § 19:36 ("[R]estitutionary remedies ordinarily are available in construction disputes . . . when (1) an express contract: . . . (b) is judicially declared to be legally unconscionable, invalid or otherwise not binding; (c) relates to directed changes in the work deemed to have been authorized under a separate oral contract not governed by a changes clause or otherwise outside the scope of the contract.") (cleaned up).

III.     Quantum Meruit (Count Three)

   A.    **The Parties' Arguments**

Air Products argues that Primoris's claim for quantum meruit in Count Three must be dismissed because "[q]uantum meruit is not recognized as a separate cause of action in Arizona" and is merely a restitutionary remedy based on the doctrine of unjust enrichment—and, thus, "because Primoris's unjust enrichment claim must be dismissed for the reasons set forth in this motion, Primoris's quantum meruit claim must also be dismissed." (Doc. 56 at 10.)

In response, Primoris argues that it "is permitted to assert an alternative claim for quantum meruit for the very same reasons [it] is permitted to assert its claim for unjust enrichment. Namely, Primoris's quantum meruit claim is proper because the Federal Rules of Civil Procedure expressly provide that Primoris 'may set out two or more statements of a claim or defense alternatively or hypothetically,' and that Primoris 'may state as many separate claims or defenses as it has, regardless of consistency.' In addition, just like its

1 unjust enrichment claim, Primoris has alleged sufficient facts to state a claim for quantum
2 meruit as every element of a claim for quantum meruit is included as an element of an
3 unjust enrichment claim.  This means that, because Primoris'[s] allegations are sufficient
4 to state a claim for unjust enrichment, its allegations must also be sufficient for purposes
5 of stating a claim for quantum meruit." (Doc. 63 at 13.)

6 In reply, Air Product relies on the same arguments employed in support of its request
7 to dismiss Count Two. (Doc. 64 at 8.)

B. **Analysis**

As with unjust enrichment claims, to establish entitlement to recovery under a quantum meruit theory, "the party must prove that (1) the other party was unjustly enriched at the expense of the claimant, (2) the claimant rendered services that benefitted the other party, and (3) the claimant conferred this benefit under circumstances that would render inequitable the other party's retention of the benefit without payment." *W. Corr. Grp., Inc. v. Tierney*, 96 P.3d 1070, 1077 (Ariz. Ct. App. 2004).  Also, "[t]he doctrine of quantum meruit has no application where an explicit contract exists." *Advance Leasing & Crane Co. v. Del E. Webb Corp.*, 573 P.2d 525, 526 (Ariz. Ct. App. 1977).

Under Arizona law, it is not entirely clear whether quantum meruit is a cause of action that may be pleaded in the alternative or is merely a measure of damages.  On the one hand, several cases, including the most recent Arizona Supreme Court case discussing the issue, appear to recognize quantum meruit as an equitable cause of action for services rendered. *Murdock-Bryant Const., Inc. v. Pearson*, 703 P.2d 1197, 1201-02 (Ariz. 1985) ("Thus, quantum meruit was the common law count or form of action which allowed recovery where the plaintiff had performed services for the defendant, whether the services were provided at the defendant's request, on a theory of implied-in-fact contract, or without the defendant's request but benefiting him in some way. . . . These concepts are a part of Arizona jurisprudence."); *Evans v. Mason*, 308 P.2d 245, 248 (Ariz. 1957) ("[O]ne who has rendered services pursuant [to an unenforceable contract] is not remediless for he can sue on a quantum meruit, a promise to pay the reasonable value thereof being implied.");

*Agric. Hydroponic Coop.,* 2025 WL 1882817 at *3 (discussing a case in which a plaintiff "could . . . sue under quantum meruit"); *Pelletier v. Johnson*, 937 P.2d 668, 672-73 (Ariz. Ct. App. 1996) (referring to "a party prevailing on a quantum meruit claim").  On the other hand, these cases either do not address the issue in great depth or do not explicitly state that quantum meruit forms an independent action under Arizona law.  And several other opinions from the Arizona Court of Appeals have addressed the nature of quantum meruit suits in somewhat more depth and reached the opposite conclusion.  *W. Corr. Grp.*, 96 P.3d at 1077 ("Quantum meruit is the measure of damages imposed when a party prevails on the equitable claim of unjust enrichment.") (cleaned up); *Landi v. Arkules*, 835 P.2d 458, 467 (Ariz. Ct. App. 1992) ("Quantum meruit is actually a measure of damages, not a remedy.  Recovery under quantum meruit is based on the value of services rendered.").

In deciding how to reconcile these cases, the Court is guided by the principle that it must look to the Arizona Supreme Court when discerning the status of Arizona law.  *In re Kirkland*, 915 F.2d 1236, 1238-39 (9th Cir. 1990) ("When interpreting state law, a federal court is bound by the decision of the highest state court.  In the absence of such a decision, a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions . . . ."); *Peña v. Greffet*, 110 F. Supp. 3d 1103, 1132 (D.N.M. 2015) ("Just as a court engaging in statutory interpretation must always begin with a statute's text, a court formulating an *Erie* prediction should look first to the words of the state supreme court.").  The only cases from the Arizona Supreme Court relevant to the issue—*Murdock-Bryant* and *Evans*—suggest that quantum meruit can be brought as a claim in Arizona.  Moreover, Air Products cites no cases—nor could the Court find any— in which Arizona courts have dismissed claims for quantum meruit on the basis that such claims do not exist under Arizona law or were merely duplicative of unjust enrichment claims.

Air Products also appears to argue that even if quantum meruit could qualify as a standalone cause of action, Primoris has not pleaded a valid quantum meruit claim for effectively the same reasons it has not pleaded a valid unjust enrichment claim.  That

1  argument fails for the same reasons outlined in Section II of this order.  Assuming the truth
2  of the FAC's allegations and drawing all reasonable inferences in Primoris's favor,
3  recovery under quantum meruit is a plausible alternative claim at this stage of the case.[5]
4  Accordingly,
5  **IT IS ORDERED** that Air Products' motion to dismiss (Doc. 56) is **denied**.
6  Dated this 26th day of August, 2025.

_____
Dominic W. Lanza
United States District Judge

---

[5] As with the unjust enrichment claim in Count Two, the FAC specifically notes that the quantum meruit claim in Count Three is being pleaded in the alternative to the breach-of-contract claim in Count One.  (Doc. 54 ¶ 129.)

- 12 -